**FILED**
November 16, 2023 12:27 PM
ST-2014-CV-00543
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| PETER PHILIP, | ) | |
| | ) | **CASE NO. ST-2014-CV-00543** |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR DAMAGES** |
| TOYOTA MOTOR NORTH AMERICA, INC., | ) | |
| TOYOTA MOTOR ENGINEERING & | ) | **JURY TRIAL DEMANDED** |
| MANUFACTURING NORTH AMERICA, | ) | |
| INC., TOYOTA MOTOR SALES, U.S.A., INC., | ) | **PUNITIVE DAMAGES SOUGHT** |
| TOYOTA MOTOR CORPORATION, | ) | |
| TOYOTA DE PUERTO RICO CORP., and | ) | |
| LAMBERT-HILTON, INC. D/B/A/ TOYOTA | ) | |
| OF ST. THOMAS, | ) | **Cite as 2023 VI Super 72U** |
| | ) | |
| **DEFENDANTS.** | ) | |

**NOT FOR PUBLICATION**
**MEMORANDUM OPINION AND ORDER**

¶1. Pending before the Court is Defendants Toyota Motor Sales, USA, Inc. ("TMS") and Toyota Motor Corporation's ("TMC") (collectively, "Toyota") Motion for Protective Order Limiting the Scope of Rule 30(b)(6) Deposition Regarding "Other Incidents." Plaintiff Peter Philip ("Philip") opposed Toyota's motion. For the following reasons, Toyota's motion for protective order will be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL HISTORY

¶2. In his complaint filed on November 21, 2014, Philip alleges that on April 12, 2014, his 2006 Toyota Highlander Hybrid vehicle suddenly and without warning uncontrollably accelerated, careened out of control up a stone wall embankment, became airborne, landed on a driveway and eventually crashed into a residence. Philip claims that the unintended acceleration was caused by

a defect in the vehicle's electronic throttle control system with intelligence ("ETCS-i").[1] More generally, Philip asserts that Toyota vehicles with ETCS-i are vulnerable to unintended and sudden acceleration.

¶3.    On July 28, 2016, and July 29, 2016, Philip conducted depositions of TMS and TMC corporate officers. However, the parties could not agree whether it was permissible to depose the designees regarding (1) "other incidents" in which Toyota vehicles have crashed due to unintended acceleration and (2) a March 19, 2014, Deferred Prosecution Agreement ("DPA") between TMC and the Office of the Attorney General for the Southern District of New York. As a result, Defendants moved for a protective order seeking to bar Philip from deposing TMS and TMC's Rule 30(b)(6) designees on those disputed issues.

¶4.    On November 10, 2017, the Court issued a Memorandum Opinion[2] and Order in which the Court ordered that the 30(b)(6) deposition of TMC may proceed regarding the March 19, 2014, DPA provided the deposition questions are narrowly tailored to concern vehicles with ETCS-i defects that occurred between January 1, 2004, and April 12, 2014. The Court's ruling resolved the parties' dispute regarding the DPA. The Court's November 10, 2017 Order only partially resolved the scope of the deposition regarding "other incidents" in which Toyota vehicles have crashed due to unintended acceleration. *Philip v. Toyota Motor North America, Inc.*, 2017 V.I. LEXIS 158, *6 (Super. Ct. V.I. November 10, 2017). The Court, in addressing the "other incidents" dispute, ordered that:

> The 30(b)(6) depositions of Toyota Motor Sales and Toyota Motor Corporation may proceed regarding (1) lawsuits filed against TMS and TMC regarding unintended acceleration caused by ETC system defects that occurred between January 1, 2004 and

---

[1] The parties and the Court have used different acronyms for the Electronic Throttle Control System with Intelligence. They have used ETC system, ETCS-I or ETCS-i.

[2] Dunston J. signed the Memorandum Opinion and Order on November 10, 2017, but it was entered by the Court on November 17, 2017.

April 12, 2014, (2) communications between TMS and TMC and other Defendants regarding unintended acceleration of Toyota vehicles caused by ETC system defects that occurred between January 1, 2004 and April 12, 2014 and (3) other incidents in which Toyota vehicles crashed due to unintended acceleration caused by ETC system defects that occurred between January 1, 2004 and April 12, 2014.

Intending to have the parties work together to set reasonable limitations on the extent of the inquiry during the depositions, the Court further ordered that before the resumption of the Rule 30(b)(6) depositions, (1) "Plaintiff shall devise new parameters in an effort to limit the scope of Plaintiff's discovery inquiry regarding lawsuits arising from, and internal corporate communications regarding, unintended acceleration incidents occurring between January 1, 2004, until April 12, 2014, in order to lessen Defendants' burden when preparing the Rule 30(b)(6) designees for their depositions" and (2) the parties will meet and confer to attempt to narrow the scope of discovery consistent with the Memorandum Opinion."

¶5.    In compliance with the Court's Order, the parties conferred extensively but could not arrive at a compromise. In addition to parties' exchange of letters and emails, Toyota conducted a WebEx PowerPoint presentation on March 5, 2018. Toyota offered expert James Walker for deposition to answer questions, and on August 2, 2018, Philip deposed James Walker. Toyota also provided Philip with the August 15, 2018 Declaration of expert Harold Clyde. Toyota also claims that Philip had access to relevant information in the expert report of Toyota's designated experts and depositions transcripts of Toyota's corporate representatives. On October 5, 2018, TMS and TMC again moved for a protective order limiting the scope of the Rule 30(b)6) deposition regarding "other incidents." The motion has been fully briefed, and this Court heard arguments on the motion on September 6, 2023. On September 13, 2023, Toyota informed the Court that the parties had not reached any further agreement concerning the issues raised in their October 5, 2018, Motion for Protective Order Limiting the Scope of Rule 30(b)(6) Deposition Regarding "Other Incidents."

Cite as 2023 VI Super 72U

## II.    DISCUSSION & ANALYSIS

¶6.    Rule 26(b)(1) of the Virgin Islands Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Information within this scope of discovery need not be admissible in evidence to be discoverable."[3] When determining the extent of discovery, the key factor to consider is the relevance of the information rather than its admissibility at trial. *Donastorg v. Walker*, 2019 V.I. LEXIS 66, \*6 (V.I. Super. Ct. July 11, 2019) (noting that the singular factor for determining whether information is discoverable is its relevance). In this matter, the Court previously held that a party's discovery requests should be considered relevant if there is any possibility that the information sought may be relevant to the party's claim. *Philip*, 2017 V.I. Lexis 158 at 4. "The Court is afforded broad discretion in determining the relevancy of information sought, and discovery is often liberally granted to permit parties a fair opportunity to develop their causes of action or defenses." *Guardian Ins. Co. v. Estate of Knight-David*, 2014 V.I. LEXIS 159, \*5, (V.I. Super. Ct. Sept. 2, 2014).

¶7.    Rule 401 of the Virgin Islands Rules of Evidence defines relevant evidence as "evidence that has any tendency to make a fact more or less probable than it would be without the evidence" and is "of consequence in determining the action." V.I.R.E. Rule 401; *see also Thomas v. People of the Virgin Islands*, 60 V.I. 183, 196 (V.I. 2012)(explaining that the "test for relevance is whether proffered evidence has '*any tendency*' to make the existence of any fact that is 'of consequence' to the determination of the action 'more probable or less probable than it would be without the evidence.'"). Virgin Islands Courts have interpreted what constitutes relevant evidence at the

---

[3] V.I.R. Civ. P. 26(b)(1).

discovery stage broadly. *See, e.g., Samuel v. Century Hill, Inc.*, 2020 V.I. LEXIS 16, *6, 2020 (V.I. Super. Ct. Feb. 25, 2020) (explaining that the "any tendency" language in Rule 401 makes relevance standard very easy to satisfy, does not require the evidence to be dispositive of a fact in issue and simply makes the existence or non-existence of a fact more or less likely). However, V.I. R. Civ. P. 26(c)(1) allows a party to move for a protective order limiting the scope of discovery or disclosure to specific matters. A court may, for good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" relating to discovery requests.[4]

¶8.    In its November 2017 Order, this Court, recognizing that it would be burdensome for Toyota's Rule 30(b)(6) designees to answer questions regarding unintended acceleration caused by ETCS-i defects in all Toyota vehicles, given the sheer volume of such incidents, ordered Philip to devise new parameters for the depositions limiting the scope of the discovery inquiry. *Philip*, 2017 V.I. LEXIS 158 at 6. To achieve consensus in narrowing the scope of the depositions, the Court ordered the parties to meet and confer before conducting Rule 30(b)(6) depositions of Toyota. *Id.* The Court suggested Toyota provide Philip with information regarding the similarities and differences of the ETCS-i in the 2006 Toyota Highlander and other Toyota models during the meet and confer. *Id.* The Court explained that "[a]t this stage in the proceedings, it is unclear whether the ETC system in a 2006 Toyota Highlander differs significantly from the ETC systems in other Toyota models. Philip is entitled to utilize discovery to determine whether other incidents of unintended acceleration in Toyota vehicles are substantially similar to the incident involving Philip's vehicle." *Id.* at 4-5.

---

[4] V.I.R. Civ. P. 26(c)(1).

¶9.     Toyota urges the Court to limit the scope of "other incidents" of unintended acceleration caused by ETCS-i defects that Philip may inquire about during the Rule 30(b)(6) deposition of Toyota's designees to the 2006-2010 Toyota Highlander Hybrid and the 2006-2008 Lexus RX400h. Toyota claims that the scope of Philip's intended examination of Toyota's representatives at the deposition is oppressive and unduly burdensome and seeks discovery of matters that are not relevant to Philip's claims. To justify its recommended limitations on the scope of the "other incidents" deposition questioning, Toyota claims that they have provided Philip with extensive evidence to distinguish the 2006 Toyota Highlander Hybrid and its ETCS-i from all non-hybrid model vehicles equipped with ETCS-i and also have provided sufficient evidence to distinguish the 2006 Toyota Highlander Hybrid and its ETCS-i from the ETCS-i featured in certain other hybrid models. Toyota complains that Philip offered no limitation beyond the parameters outlined in the Court's November 2017 Order.

¶10.    In his opposition brief, Philip asserts that Toyota's presentation did not demonstrate that the ETCS-i in the 2006 Highlander Hybrid is any different than the ETCS-i system in other Toyota vehicles. Philip further argues that there should be no limitation on "other incidents" inquiry at the deposition as all Toyota vehicles equipped with electronic throttle control use a computer or a microprocessor or a couple of microprocessors. This Court is not persuaded by Philip's oversimplified comparison, which fails to take into account the distinctive and unique features between the hybrid and non-hybrid Toyota vehicles.

¶11.    In substantiating its proposed limitations on the scope of the deposition, Toyota argues that in all Toyota vehicles sold since 2006, the throttle valve is controlled electronically; however, there are significant differences between vehicle models and vehicle series "which cannot be swapped out from vehicle to vehicle." Toyota claims that any defect found in the ETCS-i would be unique

*Peter Philip v. Toyota Motor North America, Inc., et al*
ST-2014-CV-00543
Memorandum Opinion and Order
Page **7** of **10**

Cite as 2023 VI Super 72U

to the make and model series of the vehicle based on differences in hardware and software. Specifically, they argue extensively that the ETCS-i differs significantly between hybrid and non-hybrid vehicles. The following are some of the unique features of the hybrid vehicles and differences between the hybrid and non-hybrid ETCS-i vehicles that Toyota highlights:

(1) In the non-hybrid vehicles equipped with ETCS-i, the vehicle's acceleration force is solely provided by the internal combustion engine, and the ETCS-i controls all the acceleration force provided by the vehicle. In contrast, the hybrid vehicle integrates a hybrid powertrain system called the Hybrid Synergy Drive, which uses the combined energy of a gasoline-powered combustion engine and electric motor generators powered by high-voltage batteries to provide the vehicle acceleration force.

(2) Hybrid vehicles have a Hybrid Electronic Control Unit ("Hybrid ECU").

(3) When a driver depresses the accelerator pedal in a hybrid vehicle, the accelerator pedal sensors measure the depression of the pedal and send an electronic signal to the Hybrid ECU. The Hybrid ECU calculates the Hybrid Drive output acceleration force based on this input signal, vehicle speed, and the high voltage battery charge.

(4) The Hybrid ECU may command acceleration force from the engine, the motor-generators, or both. The Hybrid ECU constantly monitors and adjusts the operation of the engine and motor-generators to optimize performance and fuel economy.

(5) The Hybrid ECU directs the operation of the ETCS-i control, monitoring, and failsafe functions. The Hybrid ECU contains software that monitors the Hybrid Drive powertrain and employs fail-safe functions if an abnormality is detected.

(6) The ETCS-i in hybrid vehicles only controls the acceleration force provided by the engine when the engine operates; the ETCS-I and its software do not control or monitor the acceleration force provided by the electric motor generators, making the function and operation of the ETCS-i in hybrid vehicles different from the function and operation in non-hybrid vehicles.

(7) The engine control software used in the non-hybrid Highlander is not interchangeable with the engine control software of the hybrid Highlander.

*Peter Philip v. Toyota Motor North America, Inc., et al*
ST-2014-CV-00543
Memorandum Opinion and Order
Page **8** of **10**

Cite as 2023 VI Super 72U

(8)     The hybrid braking system differs significantly in design and operation from the hydraulic braking system used in non-hybrid Toyota vehicles.

(9)     The hybrid vehicle has a brake-by-wire system that provides the deceleration force for the vehicle when applied and can regenerate electrical energy for the high-voltage battery during the vehicle braking.

(10)    The hybrid brake system differs from the hydraulic brake system used on non-hybrid vehicles because of the Part Protection Logic ("PPL") function in the Hybrid ECU. When the Hybrid ECU receives an acceleration request and a deceleration request, the Hybrid ECU can engage the PPL function and cut the fuel flow to the internal combustion, which reduces the Hybrid Drive vehicle acceleration force, causing the vehicle to slow down.

Toyota argues that because of these significant differences between hybrid and non-hybrid vehicles equipped with ETCS-i, non-hybrid vehicles should be excluded from the population of vehicles addressed at the deposition. The Court agrees. Permitting the discovery of non-hybrid vehicles when the ETCS-i differs significantly between hybrid and non-hybrid vehicles is essentially the equivalent of comparing apples to oranges.

¶12.    Philip has provided no information to refute Toyota's contention that the ETCS-i and braking system in hybrid Toyota vehicles differ significantly in hardware, software, operation, and design from the ETCS-i and braking system in non-hybrid vehicles. Without providing any legitimate basis for doing so, Philip asks the Court to unjustifiably reject the scientific and engineering information provided by Toyota. The Court declines to do so. For the information to be relevant, it must fall within some bounds of similarity. Moreover, whether a product is defective must be judged within the technological milieu existing when the product is manufactured. Toyota has demonstrated that the ETCS-i differs significantly between hybrid and non-hybrid vehicles.

*Peter Philip v. Toyota Motor North America, Inc., et al*
ST-2014-CV-00543
Memorandum Opinion and Order
Page **9** of **10**

Cite as 2023 VI Super 72U

Thus, the relevant information in this instance is "other incidents" of unintended acceleration in hybrid vehicles using similar technology at a defined manufacturing period.

¶13.    Toyota next argues that the 2006 Hylander Hybrid differs from other hybrid models and subsequent year models. As stated above, Toyota proposes expanding the deposition inquiry to include the 2006-2010 Toyota Highlander Hybrids and 2006-2008 Lexus RX 400h vehicles. Toyota claims that the differences between this subset of hybrid vehicles and other hybrid vehicles render other incident discovery of other hybrid vehicles irrelevant. Specifically, Toyota claims that the "component part" such as engine model, engine cylinders, engine size, drive motor transaxle model, accelerator pedals, throttle body, Hybrid ECU, and engine control of the various hybrid vehicles have different part numbers. Toyota argues that a different part number for the component part means the part is not interchangeable. Given the broad scope of discovery under the Virgin Islands Rules of Civil Procedure, this Court does not consider the differences in component part numbers among hybrid vehicles to be so significant as to render inquiry of "other incidents" of other hybrid vehicles irrelevant. Toyota has not presented information to support a finding that the design, engineering, and technology used in different models of hybrid vehicles vary so significantly from one model of hybrid Toyota vehicles to the next that other hybrid vehicles in the same series or period should be excluded from discovery. Rule 26(b)(1) of the Virgin Islands Rule of Civil Procedure "permits a party to discover any nonprivileged matter that is relevant to any party's claim or defense, even information that is not admissible at trial, so long as the discovery is reasonably calculated to lead to the discovery of admissible evidence." *Molloy v. Independence Blue Cross*, 56 V.I. 155, 169 (V. I. 2012). Hence, the Court will not limit discovery to the 2006-2010 Toyota Highlander Hybrid and the 2006-2008 Lexus RX 400h, as

*Peter Philip v. Toyota Motor North America, Inc., et al*
ST-2014-CV-00543
Memorandum Opinion and Order
Page **10** of **10**

Cite as 2023 VI Super 72U

suggested by Toyota, but will expand the scope of discovery to include all Toyota hybrid vehicles within the 2006-2010 series.

### III.    CONCLUSION

¶14.    Based on the foregoing, the Court does not find information regarding other claims or lawsuits regarding unintended acceleration in non-hybrid Toyota vehicles to be relevant to establish a design defect in Plaintiff's 2006 Toyota Highlander Hybrid that led to the crash on April 12, 2014, and is the subject of this lawsuit. The Court finds that the proper, reasonable, and relevant inquiry of Toyota's corporate representatives should be other incidents occurring between January 1, 2004, and April 12, 2014, relating to all models of Toyota hybrid vehicles within the 2006-2010 series. Accordingly, it is hereby

**ORDERED** that the Toyota Defendants' Motion for Protective Order is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that the Rule 30 (b)(6) deposition of the Toyota Defendants regarding "other incidents" of unintended acceleration shall be limited to incidents occurring between January 1, 2004, and April 12, 2014, relating to all models of Toyota hybrid vehicles within the 2006-2010 series.

**ORDERED** that copies of this order shall be distributed to counsels of record.

Dated: **November 16, 2023**

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
    Latoya Camacho
    Court Clerk Supervisor __11_ / _20_ / _23_

**CAROL THOMAS-JACOBS**
Judge of the Superior Court
of the Virgin Islands



**FILED**
November 20, 2023 12:30 PM
ST-2014-CV-00543
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Thomas/St. John

Peter Philip,

        **Plaintiff**

v.

Toyota Motor North America, Inc. et al,

        **Defendant.**

Case Number: **ST-2014-CV-00543**

Action: **Damages**

## NOTICE OF ENTRY
## OF A
## MEMORANDUM OPINION AND ORDER

**To:** William Avery Thomas, Esq.        Simone R.D. Francis, Esq.
Marjorie Beth Whalen, Esq.
Christopher A. Kroblin, Esq.

**Please take notice that on November 20, 2023**
a(n)        **Memorandum Opinion and Order**
dated   **November 16, 2023**   **was/were entered**
**by the Clerk in the above-titled matter.**

**Dated:**  **November 20, 2023**

                            Tamara Charles
                            Clerk of the Court

By:                         
                           Danica A. Miller
                           Court Clerk II